ONTi), who had occasion lately to consider the question, arising on a paragraph of the statute, enacted by the general assembly of *276 Virginia, in the year 1705, for distributing ■the goods of an intestate,* disagreeing with english judges in their exposition of the same paragraph, in their statute for that purpose, submits to censure the following result of his disquisition, not without hopes of shewing, as he hath endeavored to shew in other instances, that the judicial determinations in England do not deserve the respect with which they are honored in this country.
By the 22 & 23 Car. 2. Cap, 10, it is enacted, ‘that all ordinaries and ecclesiastical judges, upon granting administration of persons dying intestate shall take bond of the administrator, with two, or more sureties, with condition that the administrator shall make a true and perfect inventory of all the goods and chatels of the deceased, and exhibit it in the registry of the ordinary court by such a day, and that the said ordinaries, and judges respectively shall and may, and are enabled to proceed *and call such administrators to account for and touching the goods of any person dying intestate, and upon hearing and due consideration thereof, to order and make equal and just distribution of what remaineth clear (after all debts, funerals, and just expenses of every sort first allowed and deducted). amongst the wife and children, or childrens children, if any such be, or other wise to the next of kindred, to the dead person, in equal degree, or legally representing their stocks, pro suo cuique jure, according to the laws in such cases, and the rules and limitation hereafter set down; and the same distributions to decree^and settle, and to compel such administrators to observe and pay the same, by the due course of his majesty’s ecclesiastical laws.
‘Provided always that all ordinaries, and every other person, who by this act is enabled to make distribution of the surplus of the estate of any person dying intéstate, shall distribute the surplusage of such estate, or estates, in manner and form following, that is to say, one third part of the said surplusage to the wife of the intestate, and all the residue by equal portions to and amongst the children of such persons dying intestate, and such persons as legaly represent such children in case any of the said children be then dead, other than such child, or children (not being heir at law) who shall have any estate by the settlement of the intestate, or shall be advanced by the intestate in his life-time b3’ portion, or portions equal to the share, which shall by such distribution be allotted to the other children to whom such distribution is to be made; and in case any child, other than the heir at law, who shall have any estate by settlement from the said intestate, or shall be advanced by the said intestate in his life time, by portion not equal to the share, which will be due to other children by such distribution, as aforesaid, then so much of the surplusage of the estate-of such intestate to be distributed to such child, or children, as shall have any land by settlement from the intestate, or were-advanced in the life-time of the intestate, as shall make the estate of all the said children to be equal, as near as can be estimated; but the heir at law, nottrithstand-ing any land that he shall have by descent, or otherwise from the intestate, is to have an equal part in the distribution with the rest of the children, without any consideration of the value of the land which he hath by descent, or otherwise, from the intestate.
‘And in case there be no children, nor any legal representatives of them, then one moiety of the said estate to be allotted to the wife of the said intestate, the residue of the said estate to *be distributed equal to every of the next of kindred of the intestate, who are in equal degree, and those who legally represent them.
‘Provided that there be no representations admitted among collaterals after brothers and sisters children; and in case there be no wife, then all the aid estate to be distributed equally to, and amongst, the children ; and in case there be no child, then to-the next of kindred in equal degree of or unto the intestate, and their legal representatives, as aforesaid, and in no other manfier whatsoever.’
This statute differs not materialy from the Virginia statute, on the same subject, otherwise than that the latter appoints the next of kindred by the father, if no children be, to succede with the wife.
On the words, ‘provided that there be no-representations admitted among collaterals, after brothers and sisters children,’ which are literaly transcribed into our statute, english courts have decided that the collateral kindred, whose representatives suc-cede to the shares, to which their parents, if they had been living, would have succeeded, must have been brothers and sisters of the intestate:
So that although B, the surviving brother, and D, the child of C, a deceased brother, would succede to the goods of A, d3’ing intestate, and childless, &c.
Yet B, the surviving uncle, should suc-cede to all, excluding D the child of C, a deceased uncle, from succession to a part of the goods of A, in the same circumstances.
So if B, and C, had been nephews of A : or if B, had been the uncle and C, the nephew, who by the case in 1 Atkyns rep. 4S4, are in equal degree of kindred to A.
The reasons of these decisions, explained in a celebrated argument of chief justice North, with which T. Raymond hath crowned his book of reports, p. 406, more fully than any where else, shall be here examined.
His first reason is, ‘all other relative terms generaly expressed through the whole act have the intestate for their correlative, so (wife) is meant wife of the intes *277 tate, (children) are children of the intestate, (heir at law) is of the intestate, so that, in the most plane and obvious sense, the intestate ought here to be taken for the correlative to the words brothers and sisters. ’
Observations: first, until the connection between his proposition ‘all other relative terms generaly expressed through the whole act have the intestate for their correlative,’ and his inference. ‘so that in the most plane and obvious sense of the v<'words, ‘that there be no representations admitted among collaterals after brothers and sisters children,’ the intestate ought here to be taken for the correlative to the words brothers and sisters,’ which connection hath not been discerned, be proved, the inference' is a non sequitur.
Second, this ratiocination is a mistake of the question, which is not of what tribe of collateral kindred, whether brothers, uncles, nephews, &c. the children shall represent their parents, but, to what degree the representation of those collateral kindred, who if they were not dead, would have succeded, shall extend, if these restrictive words had not been inserted, descendents of collateral kindred, more remote than their children, would have legaly represented them, representatives of nearest kindred may be branched into children, grandchildren, great grandchildren, &c.
Third, the proposition is not true, if he, who stated it, had completed, as fair argument required him to complete, the series of instances in which the suitas, whence the inference was drawn, occurred, he would have found, in one place, after the words, ‘children of such persons dying intestate,’ the terms ‘and such persons as legaly represent such children, in case any of the said children be then dead,’ which are relative terms, and have for their correlative, ‘children of such persons dying intestate;’ in another place, after the word, ‘children,’ the terms, ‘nor representatives of them,’ which are relative terms, and have for their correlative, ‘children;’ in another place, after the words, ‘next of kindred to the dead person, in equal degree,’ the terms ‘representing their stocks,’ which are relative terms and have for their correlative, ‘next of kindred, in equal degree;’ in another place, after the words, ‘next of kindred of the intestate, who are in equal degree,’ the terms, 'and those who legaly represent them,’ which are also relative terms, and have for their correlative, ‘next of kindred of the intestate, who are in equal degree;’ and in another place after the words, ‘next of kindred, in equal degree, of or unto the intestate,’ the terms ‘and their legal representatives,’ which are likewise relative terms, and have for their correlative, ‘next of kindred, in equal degree, of or unto the intestate.’ and the proposition, to be true, ought to have been stated thus: of the relative terms, generaly expressed in the act, some have the intestate for their correlative, others have his children for their correlative, and others have the intestates next of kindred, that is collateral kindred, for their correlative, is the deduction from it, ‘so that in the most plane and obvious sense, the intestate ought to be taken for the correlative to the words, brothers and sisters,’ sound logic? yet it hath been so deemed in Westminster hall, for almost six score years!
His second reason is, ‘because the distribution is given by the act for their relation to the intestate, and not for their relation to the collaterals; therefore the relation mentioned ought naturaly to refer to the intestate, and not to the collaterals, there may be cases put wherein brothers and sisters children of collaterals may be no kin to the intestate, if they were by the half blood, and it cannot be pretended that such shall have a share in the distribution, now why should the words be taken in the sense that comprehends those, that have no title to distribution?’
Observations: first, ‘that distribution is given, by the act, to next of kindred, for their relation to the intestate,’ is admitted: that the legislature, moved by the same consideration, called the representatives of collateral kindred to succession in place of him or her for whom they are substituted is admitted also; and most frequently such representatives are of kindred to the intestate; and when the case shall happen otherwise it is not so unreasonable as at first it might seem; because, he who is represented, if he had survived the intestate, and received his share, is presumed to have designed to will it, when he should die, to the same representative, who may not be of kindred to the intestate, but the statute having appointed representatives of collateral kindred, in general terms, to suc-cede to the shares of their stocks, the argument, that representatives who are not of kindred to the intestate, may in some cases succede, if such succession be unreasonable in those cases, doth not conclude against representatives who are of kindred to the intestate, the conclusion then, which ought to have been particular, is universal, and the argument vitious.
Second, a position, here taken for granted, that the representatives of defunct collaterals, even so near as brothers, must be of kindred to the intestate, may be proved, by necessary consequence from weslmonasterian authority which may be a good argumentum ad hominem, to be untrue, thus:
The case between Smith and Tracey (2 Mod. rep. 204) was, A dies intestate, having three brothers B, C, and D, of the whole blood, and a brother, E, and a sister If, of the half blood: and, by judgment of the court of kings bench, 28 and 29, Car. 2. the brother and sister of the half blood E, and E, succeeded toA’s goods and credits, taking equal shares with his brothers of the whole blood, B, C, and D.*
*278 *Vary the case, by supposing E and F, to have died, leaving children, in the life time of A; these children, representing their parents, would have suc-ceded to their shares, being the children of a brother and sister.
This will, as is believed, be granted.
Then vary the case again, by supposing the mother of E, and E, who appear by the opinion of the court not to have been uterine brother and sister of A, B, C, and D, to have borne G, and H, children, by another husband, and E, and F, to have left no children; G and H would have represented E, and F, as legaly as the children of E and F, and would have succeded to the same shares.
This is believed to be a consectary from the judgment in the case between Smith and Tracy.
.Yet G and H would have .been, in Norths language, ‘no kin to the intestate’ A.
Third, the question, at the end of this second reason as it is called, ‘why should the words’ (they were the words provided that there be no representations admitted among collaterals, after brothers and sisters children) ‘be taken in the sense that comprehends those that have no title to distribution,.’ is not a question for which those words taken in any sense, of - which they are capable, can minister occasion, other parts of the statute ‘comprehended those that have title to distribution,’ dividing collaterals, who should succede, into two classes, they were distinguished by these characters, first, ‘next of kindred,’ who must be in the same degree, or in equal degree; and, second, ‘their legal representatives, ’ that is, the representatives of those, who are next of kindred, the former were defined by the terms, ‘next,’ and ‘in equal degree,’ the latter were undefined, otherwise than that they must have been in existence, at the death of the intestate, they might have been children, grand children, great grand children, or more remote, in some of which cases the portions would be inconsiderable, to prevent this were the forecited words inserted, they do not declare, because unnecessary would have been here a declaration comprehending those col-laterals, or kindred, whose representatives should be intitled to distribution, they do nothing more, as hath already been observed, than terminate the progress of representation, in the immeSiate offspring from the collaterals, providing that representation shall not be admitted, after brothers and sisters children, that is, shall not be admitted in any degree of kindred after, or more remote than, the children of brothers and sisters children, that is, shall not be admitted in any degree of kindred after, or more remote than, the children of brothers and sisters, *and (one, who feels the argumentum ad judicium more forcibly than the argumen-tum ad verecundiam, as I. Eocke, , in his essay on human understanding b. iv. chap, xvii. § 19 — 22, calls them, ventured to add) brothers and sisters of the collaterals, in the words, ‘provided that there be no representations admitted among collaterals, after brothers and sisters, children,’ interpreted consistently with the sense of them, which is complete, and without interpolation, for which no cause appeareth, the legislature contemplated a single object, namely, the limit beyond which the right of representation shall not be asserted, but the author of this argument will have it, that the legislature contemplated, besides that, .another object, namely the collaterals, the right of whose representatives shall not be asserted, this is the second instance, but is not the last, of a mistake of the question for it occurs in two other parts of this composition by North.
His third reason is, ‘because as these words provided that here be no representations, &c. ‘comprehend’ (comprehend again) ‘more than ought to have distribution in some instances, so they fall short, and leave out many, that by parity of reason ought to have distribution, and therefore this sense, they would put upon the words, is very improper.’
‘ As for instance:
‘Suppose the next of kin are nephews, by several brothers, and some of them are dead, leaving children, these children are not brothers children to the collaterals, and cannot within the words,’ provided, &c. ‘clame’ although, by the way, the child must clame, if they can clame at all, not by those words, which give to no one) ‘any share; but if by chance any of them, had had uncles surviving, then they had been brothers children to the collaterals,’
So, if the next of kin are cousin germans, and some of them are brothers to one another, others are not; the children of such as them as had brothers that survived the testator,) it should be intestate) shall have a share, but the children of such who had no surviving brothers shall have no share which is most absurd, for they ought to have a share as they relate to the intestate and not as they relate to the collaterals.’
Observations: first, the question, upon the words, ‘provided that there be no representations, admitted among collaterals, after brothers and' sisters children,’ is, as before, not who are ‘comprehended by the words brothers and sisters’ but, beyond what degree of kindred, the representatives of collaterals, whosoever those collaterals be, shall or shall not succede?
Second, in the first example, for illustration of the third reason, *is taken for granted this position • the brothers and sisters of collateral kindred, whose representatives, not more than children, shall succede must all, by the words of the statute, be owadefopoi — brothers and sisters every one of every other — brothers and sisters by the same parents, or by one common parent; a position, if not admitted, necessary to be proved, because, without it, a concatenation of the premises and the conclusion from them, stated in this third reason, is defective, the position is not admitted, but, on the contrary, its redargu *279 tion, to be here essayed, by the medium of that example, varied for adapting the position to cases equaly within its scope, is not despaired, for,
Suppose the nearest kindred of A to have been B and C, sons of a deceased brother, and D and 15, daughters of a deceased sister; B and D to have died in the life time of A, both leaving children, the former F and G and the latter H and I; and afterwards A to have died intestate, without alteration in his family, of F, G, H, and I, may be truly predicted, that they are brothers and sisters children ; for by the hypothesis the father of F and G is the brother of C, and the mother of H and X is the sister of BJ; so that F and G are children of a brother and H and I are children of a sister; and that which is true of each pair of children must be true of both, consequently the position is false. But if F, G, H, and I, were children of different parents, so that neither of them had a brother or sister, it would be nothing to the purpose, as will appear.
Third, an absurdity, by the second example, attributed to the exposition, admitting representation of collateral kindred, who were not brothers and sisters of the intestate, is a consequence of two sophisms, already detected in the argument of North, one ignoratio elenchi, or a mistake of the question, the other a petitio principii, or a supposition of what is not granted, and if, ‘that the children of such cousins german, as had brothers, that survived the intestate, shall have a share but the children of such, who had no surviving brothers shall have no share be most absurd,’ as he says, which is not denied; this argument may partly shew the pravity of his interpretation.
Of the scholia appended to this third reason, that, which supposeth, for the words, ‘provided that Ihere be no representations admitted among collaterals after brothers and sisters children,’ if the legislature had not designed to exclude from succession representatives, more remote than brothers and sisters children of the intestate, would have been substituted the words, ‘provided that there be no representations admitted among collaterals after their children,’ shall only be noted, because no *other is thought to deserve notice, and this for the purpose of answering, that the former may be interpreted and ought to be interpreted, in the sense of the latter, which answer is proposed to be verified in the sequal.
His fourth reason is, ‘because the excluding representations in a remote degree agrees with the reasons, upon which distribution is grounded, for 1, nephews and nieces to the intestate are of so near relation, the intestate having been as a parent to them, that they are of great regard, whereas remoter degrees have no regard but for their proximity (because there are none nearer) and therefore no reason to admit representations amongst them, to bring in a more remote degree to share with those that are nearer of kin. 2. again, nephews and nieces cannot be many, so that the division cannot come into very many parcels; but in a remote degree there may be very many of the same degree, and to admit a subdivision to the children of any deceased would make the shares of such children very inconsiderable, not worth demanding.’
Observations: first, the reason, upon which distribution is grounded, is an in-testates affection for all his kindred, more or less, warm, as the objects of it were related to him nearly or remotely; a thermometer, analogous with which the portions of the distributable subject are graduated; successors nearest, and in the same degree, taking equal portions, and successors in a remoter degree taking the portions, not of themselves who are not, but of their stocks, who were, in the same degree, if so, the position, that, ‘excluding representations in a remote degree, agrees with the reasons upon which distribution is grounded,’ is so far from being true, that representations, among lineal successors, are admitted in remotest degrees, and among collaterals, would as extensively have been admitted, (in every case where they are designated by the appellation, ‘next of kindred,’ the words, ‘and their representatives,’ or words of the same import, immediately following) if the representations had not been abscinded, by other words, after the degree of brothers and sisters children, whose brothers and sisters will be a fitter subject of enquiry elsewhere.
Second in the phrase, ‘representations in a remote degree,’ the term ‘degree’ may mean the degree of kindred, either between the representatives and their stocks, or between the intestate and his collateral kindred. in the former sense, the reason is not to the purpose; for no man denies that representations are not admitted among collateral kindred, whosoever they be, after or beyond the degree of brothers and sisters children; in the latter sense, the reason is not more pertinent, if the object *which the words of the statute, truly intrepreted, shew the legislature to have contemplated, was to declare, not of what collateral kindred representation shall not be admitted but, after or beyond what degree of kindred between the collaterals surviving, and the representatives of those who were dead, representation shall not be admitted: and that this was the object hath been partly, as is believed, and will hereafter be perhaps fully proved, the notion stated in this reason, of ‘the intestates having been as a parent to his nephews and nieces, ’ seemeth altogether imaginary,* and the argument drawn from the remark, that when the multitnte of successors is numerous, the portions of representatives, by means of subdivisions, would be inconsiderable and worthless, which, however, would not happen so frequently as the contrary, is not an *280 argument against the right of a representative to his modicum, if the words of the statute have intitled him to it. the argument, if it prove any thing, proves that the statute ought not to have admitted, not- that it did not admit, representations, wherein those subdivisions would be necessary.
His fifth and last reason is, ‘because, by the opinion of the learned, the law and practice of the spiritual courts before this act did exclude all representations of col-laterals, after the intestates nephews and nieces.’ to which he adds, ‘the whole scope of the act was to make their jurisdiction as to distribution legal, which before was condemned by the kings courts, and the words of the act (legaly representing) (pro suo cuique jure) and according to the laws in such cases (and the rules and limitation* set down) shew that there is a reference to their laws, now if there were an opinion this way before the act; there is great reason to believe, this clause, ‘provided there be no representations, admitted among collaterals after brothers and sisters children,’ was founded upon that opinion.’
Observations: first, we might learn from North himself, for in the introduction to his opinion and reasons he admits, ‘that all acts of parliament are to be expounded according to the true meaning to be collected from the words of them; and that must be a rule in this case,’ to which rule however he doth not appear in a single instance throughout his argument to have adverted, he flew the way at the start, and never recovered it. to prove that this act of parliament, if it be expounded according *to that rule, contradicts the law and practice, as they have been stated, of the spiritual courts, in this particular instance, will be attempted, and if the attempt be successful, there is no reason to believe the clause in question was founded upon the opinion of those courts, and to expound it that way;’ that is to expound the clause, which, in the only sense whereof it is capable, without interpolation, is reconcileable with other parts of the act, so as to contradict those other parts of the statute.
Second, the terms, ‘legaly representing,’ and ‘pro suo'cuique jure,’ are intelligible surely without reference to the laws of ecclesiastical courts; the words, ‘according to the law in such cases,’ if they refer to their laws at all, refer perhaps to those only, by which degrees of consanguinity are computed; aud the words, ‘rules and limitations set down,’ which are defectively quoted, and which in the statute are, ‘the rules and limitation HEREAFTER set down,’ shew that the reference is, NOT to THEIR LAWS but, to the STATUTE.
After his reasons, the chief justice proceeds to solve objections to his argument, of the solutions notice shall be taken of that only, which is in these words: ‘i confess a law clearly penned shall have its force in cases which it does reach, though it does not reach all cases: but where a law is penned, so that it may be expounded one way or other, and there is a question of the meaning of it, it is more natural to believe it was meant in that way that is clear, and reaches all cases that are in parity.of reason, than in that way which ha-s absurd consequences, as this hath, both by including those which were not intended, and leaving out those which stand in the same degree, as i shewed before.’
Observations: first, the statute is thought to be so ‘clearly penned,’ that the ‘learned judges of Westminster hall, and the learned doctors of Doctors’commons, ’ who were adjutant ministers to the chief justice on this occasion, are challenged to discover in the words of the act, if not sophisticated, that amphibolia, which is here attributed to it by the terms, ‘it may be expounded one way or other.’
Second, the statute, understood, ‘in that way that is clear,’ but different from the ‘way’ approved by the chief justice, will reach all cases within the scope of the legislative providence, and will have no ‘absurd consequences.’
His conclusion is, ‘i conceive this act was intended for a plane rule, and i think it much better to interpret it in the most plane and obvious sense which will establish the succession of personal estates, according to reason and symmetry than to strain to find out another sense for the sake of remote *kindred, that are of no regard, which will produce apparent absurdities, and subject personal estate to fancifull and intricate disputes that will need another act to compose and settle. ’
Observations: first, the act,‘in the most obvious sense’ of the words, that is, the sense, in which the archdeacon of Huntington understood them, is a ‘plane rule. ’ they will not bear the sense, in which they are otherwise understood by North, unless after the words, ‘brothers and sisters children,’ be supplied the words, ‘of the intestate.’ this supplement is called ‘interpretation,’ and perhaps may be so called by the westmonasterian vocabularies. .
Second, the reasons for the intepretation have been examined.
Third, the intrepretation, bywords which measure degrees between stocks and their representatives, would measure degrees between an intestate and his collateral kindred, and this interpretation matching things not relating to one another is called symmetry 1 symmetry not more daedalean than
Humano capiti cervicem pictor equinam
Jungere si velit--
Fourth, ‘another act which North supposed to be needful for composing and settling the fancifull and intricate disputes’ which he imagined would be raised on this, if his interpretation be rejected, is not the proper remedy for the evil apprehended by him. the remedy would be to give to judges what perhaps the legislature of Great britain have not more power to bestow, than other legislatures, for, if so plane an act as this *281 could be so mistaken, as it hath been by him and his successors, what would be the effect of another act?
HIS reasons stated in the argument of the chief justice having been examined; the statute itself shall now be considered, in order to discover the true meaning, from the words, thereof.
The statute, after requiring ordinaries and ecclesiastical judges to take bond from him, to whom they grant administration of the goods and credits of a person dying intestate, with condition to make and exhibit an inventory of them, enables and requires those ordinaries and judges to call the administrator to render account of his transactions, ‘and to order and make just and equal distribution of what remaineth clear (after all debts funerals and just expenses of every sort, first allowed and deducted) among the wife and children, or childrens children, if any such be, or, otherwise, to the next of kindred, to the dead persons in equal degree, or legaly representing their stocks, pro suo *cuique jure, according to the laws in such cases, and the rules and limitation hereafter set down; and the same distributions to decree and settle, and to compel such administrators to observe and pay the same, by the due course of his majesty’s ecclesiastical laws.’
THE phrases, ‘legal representatives,’ ‘pro suo cuique jure,’ ‘according to the laws in such cases,’ and ‘the rules and limitation hereafter set down,’ are thought by North to prove that the statute had a reference to the ecclesiastical laws, but, 1. if it had such a reference the reference by the first three phrases was only to those laws which determine who are the legal representatives of an intestate next of kindred, which was not pertinent to the question in the case discussed by him, namely, who of the in-testates next of kindred shall be represented; as hath repeatedly been observed before, not more pertinent is the solution by him of the second objection to his opinion, T. Raym. p. SOS. which solution is thought too trifling to deserve a recital. 2. the fourth phrase, correctly quoted, shews that the statute referred to the rules and limitation set down in itself, this will lead to the true question, namely, whether, by those rules and limitation, representation is admissible among collateral kindred, who are more remote than the intestate brothers and sisters?
The rules in the statute, mingled with the limitations (for of these are two) so that their connection is interrupted, stated separately for the sake of perspicuity, are,
‘Provided that ordinaries and every other person, by this act enabled to make distribution of the surplus of the estate of any person dying intestate, shall distribute the surplusage of such estate in manner and form following that is to say, one third part of the said surplusage to the wife of the intestate, and all the residue by equal portions to and amongst the children of such persons dying intestate and such persons as legaly represent them, in casq, any of the said j children be then dead, and in case there be no children, nor any legal representatives of them, then one moiety of the said estate to be allotted to the wife of the said intestate, the residue of the said estate to be distributed equaly to every of the next of kindred of the intestate, who are in equal degree, and those who legaly represent them, but in case there be no wife, then all the said estate to be distributed to and amongst the children, and in case there be no child, then to the next of kindred, in equal degree, of or unto the intestate, and their representatives, as aforesaid, and in no other manner whatsoever.’ Of the rules, those which call children of the defunct, and *representatives of such of them as may be dead, to the succession, are without any limitation, otherwise than that, a child who had been advanced by settlement of the defunct, with a portion not equal to the filial portion, can clame only the compliment, or so much as with the advancement added to it will be equal to the filial portion, out of the distributable subject, but such forisfamil-iated child, if he were an heir at law, and advanced by settlement of land upon him, shall have a full portion of the surplus.
The rules, which, if no children or representatives of them be, called the next of kindred to the succession, comprehend,
First, those kindred who are in the ascending line, that is, father and mother, &c. for the opinion in the duchess of Suffolk’s case, ‘that the mother is not of kin to her child,’ although unanimously once approved by numbers of temporal, as well as ecclesiastical, judges sufficient to entitle it to a place among what are called authorities, seemeth to have been since reprobated, the right of the mother indeed, if the father be living, is transferred to her husband; but if he were dead, she took the whole before the statute of 1 James 2. ordained a communion with brothers and sisters and their representatives: and if no parents be, the rules comprehend,
Secondly, those kindred who are in the collateral line, and who may be analysed into brothers and sisiers; if none such be, uncles and aunts, and nephews and nieces; (for, according to the determination of a case before mentioned to be reported by T. Atkyns, 1 vol. p. 454 they are in the same degree of relation) if none such be, cousins german, &c. of the intestate, and those rules, if not controuled, by the limitation, with the words, ‘and their legal representatives,’ applied to every ramification of the syllabus, ‘next of kindred,’ may be read thus:
In case there be no children nor any legal representatives of them, the said estate to be distributed equally to the brothers and sisters of the intestate, and their legal representatives; if none such be, to be distributed equally to the uncles and aunts and nephews and nieces of the intestate, and their legal representatives; if none such be, to be distributed equaly to the cousins ger-man of the intestate, and their legal repre *282 sentatives; and so forth; the words, ‘and their representatives,’ being added after every tribe of the intestates kindred, in equal degree.
These evolutions of kindred and applications of representatives are the sense and meaning of the rules, without the limitation, in explicit terms; so that
The question is reduced to this: whether that sense and that meaning are altered by this limitation: ‘provided that there be *no representation admitted among collaterals after brothers and sisters children, otherwise than that no representatives shall be admitted among collaterals in any degree more remote from their stocks than children?’
That they are not altered otherwise will appear, as is conceived, without ‘straining,’ by inserting the limitation after every one of the tribes of collateral kindred and their representatives: when the rules, united with the limitations of them, will be read,
‘In case there be no children, nor any legal representatives of them, the said estate to be distributed equaly to the brothers and sisters of the intestate, and their legal representatives;’ provided that there be no representations admitted among [these] col-laterals after brothers and sisters children ; if no brothers and sisters be, to be distributed equaly to the uncles apd aunts and nephews and nieces of the intestate, and their legal representatives; provided that there be no representations admitted among [these] collaterals after brothers and sisters children; if no uncles and aunts and nephews and nieces, or any such, be, to be distributed equaly to the cousins german, of the intestate, and their legal representatives ; provided that there be no 'representations admitted among [these] collaterals, after brothers and sisters children; and so forth.
According to this reading, liable to a single objection which shall be removed, the children of those next of kindred to the intestate in equal degree, however remote, are not excluded from successions, to the portion to which their stock, if living, would have succeeded.
Harmony by this reading is produced of all parts of the statute one with another, not a single word thereof being understood in a ‘strained’ sense, or in any other than the ordinary sense; and the system of suc-cessio in bona defunctorum hath perfect symmetry; every rule being applied to one or otuer tribe of the intestates kindred, whose representatives are appointed in the places of their stocks to succede; and the 'limitation being commensurate with the rules in every instance, except that the operation of one which would have included representatives in all degrees, is restrained by the other, the office of which was, not to destroy any rule but, to limit the extent of it, excepting the representatives of col-laterals of all denominations, after or beyond the degree of children of those collaterals, who may have died before the. intestate.
Not to allow the ‘rules set down in the statute’ to be applicable to representatives of every tribe of collaterals, would, in the phrase ‘next of kindred of, or unto, the intestate in equal ^degree, and those who legally represent them,’ deprive the words, ‘those who legally represent them,’ of more than half their meaning, and would deprive the words ‘in equal degree,’ if they have any, of all, meaning.
The words ‘in equal degree,’ applied to those collaterals, who survive and succede in their own rights, repeat the substance of the words, ‘next of kindred,’ and therefore signify nothing; for collaterals, not in equal degree, that is in a more remote degree, cannot be next, of kindred to the intestate. but the words, ‘in equal degree,’ supposed to have been inserted for some purpose, are significant, applied to dead collaterals, who, if living, would have been in equal degree with the survivors, and may be understood in the sense which this paraphrase of the rule and limitation expresses :
‘The surplusage to be distributed to the next of kindred to the intestate, and [if any of them] who are in equal degree [be dead to] their representatives, provided [although representations are admitted among children of the intestate, how remote soever those lineal representatives be from their stocks, yet] that there be no representations admitted among collaterals after [if the representatives be more remote in degree from their stocks, than] brothers and sisters children.’ this will be congruous with the antithesis, intended manifestly by the legislature, of childrens representatives to col-laterals representatives: whereas North imagined the antithesis to be of the representatives of one tribe of collaterals, that is, brothers and sisters, ■to the representatives of all other tribes of collaterals.
Here, indeed, the words ‘in equal degree,’ are taken out of their places, and transfered to other places. but the metathesis is thought to be justified by this consideration: immediately after the words, ‘next of kindred of or unto the intestate, who are in equal degree,’ the words, ‘and those who legaly represent them,’ and after the. words, ‘next of kindred, in equal degree, of or unto the intestate,’ the words, ‘and their legal representatives,’ prove incontestably, that the legislature, who must have known, that the degree of an intestates kindred could not be the same in all cases, contemplated representations among the kindred in the different degrees, and meaned to admit representations in all cases, where the kindred to be represented and those who succeded in their own rights were in equal degree of kindred to the intestate.
This meaning appeareth so manifest that, to make it more so is not the intention of the paraphrast. he intended to shew that the meaning of the words, ‘in equal degree,’ removed from the place where, if not mute, their voice is no more than *useless tautology, conspires with the supposed design of the legislature.
*283 The proviso therefore, that there be no representations admitted among- collaterals after brothers and sisters children, is an exception to each general rule.
The objection to which the explication, opposite to Norths interpretation, of the statute, was mentioned to be liable, as it is stated in his language, is ‘that, as it would comprehend more than ought to have distribution, in some instances, so it falls short, and leaves out many that, by parity of reason, ought to have distribution.’ these words occur, in his third reason; and the substance of them is repeated (T. Eaym. SOS) where he commends the interpretation ‘in his way,’ affirming that by it the statute ‘reaches all cases’ that are in parity of reason,’ and prefers it to the explication in that ‘way which,’ according to him, ‘hath absurd consequences, both by including those which were not intended, and leaving out those, which stand in the same degree.’
The objection supposeth the proviso, containing the limitation or exception, to be the part of the statute, by which representatives of collaterals clame the shares of their stocks: but untruly; for they must clame, if they can clame at all, by those parts of the statute to which that exception is applicable. But let the objection be to the foregoing application of both, or either.
The objection and the answer to it will be understood best by references occasionally to the cases exemplified in the schemes subjoined.

In the first scheme D. and E, surviving nephews, if they were next of kindred, to A, the intestate, would succede, being comprehended in that part of the rule, which is contained in these words of the statute, ‘the surplusage to be distributed to the next of kindred, ‘of or unto the intestate.’ G, the child of E, is as much comprehended in the remaining part of the rule contained in these words of the statute, ‘and their representatives,’ for he is the representative of his father, a deceased nephew of the intestate, and one of his next of kindred, as D and E are comprehended in the former part of the rule, but North objects that G, in the first scheme, is inadmissible *to the succession and cannot represent his father, for two reasons, first, the case of G was not comprehended in the proviso, ‘that there be no representations admitted among collaterals after brothers and sisters children,’ for altho’ he was the child of a brother, his father was not a brother of the intestate; and secondly, because, if G in the first scheme should suc-cede, by parity of reason, G, in the second scheme ought to succede too, but the latter is likewise inadmissible doubly, for the collateral, whom he represents was •avmk-htlios-— not a brother to the intestate, or to any other man.
Answer: the words, ‘provided that there be no representations admitted among col-laterals after brothers and sisters children, have been proved to be an exception to the general rule, that distribution to be to the next of kindred of or unto the intestate, in, equal degree, and to their representatives.’ if this be so, let be granted, that the case of G, in either scheme, is not included in the exception ; the consequence unavoidable is the reverse of Norths, G would not be inadmissible, but would succede, if the exception had not been inserted, he would have succeded being comprehended in the rule ‘the surplusage to be distributed to the next of kindred and THEIR representatives;’ and if he be not included in the exception, his title remains the same as it would have been if the exception had not been inserted, this consequence is said to be unavoidable, and truly; unless the interpretation of North, as he calls it, can be maintained, but the interpretation, for the true shape of limitation or exception, exhibits this metamorphosis of it: ‘provided, that there be no representations admitted among [any other] collaterals [than those collaterals who are brothers and sisters of the intestate, nor among them] after [the] brothers and sisters children;’ which would convert unnaturaly the limitation of a rule or the exception to it, into a rute, and abrogate the statute in more than two thirds of the cases which it would comprehend if not mutilated by this monster, to maintain it a pentad of reasons have been pompously paraded; but they are all foreigners: none of them being furnished by the statute, were chiefly pressed into the service from Doctors commons, and make no belter figure at a review than the band of ‘tattered prodigals with which ‘Ealstaff was ashamed to march through Coventry,’*'
The objector supposeth, that G, in the first scheme, and G, in the second scheme, who are confessed to ‘stand in the same degree,’ and who therefore, if either, ought each, to ‘have a *share in the distribution,’ are not in the same predicament, for one was the child of a brother, the other the child of him who never had a brother or sister, or who had survived his brothers and sisters.
But, not to urge that this objection is perverse, first, the word, AFTER, implieth intervals or degrees between the antecedent and consequent terms in any series of arithmetical progression, of the series, to which the proviso containing" the limitation or exception refers, the collateral R, is the antecedent or first term, his children is one of the consequent terms, his grand children is the next consequent term, and so on through the series of representatives, the proviso is a canon measuring the intervals or degrees of kindred, not between the intestate and his collateral kindred but, between the collateral and HIS representa *284 tives, admitting the second term, and rejecting all the terms AFTER the second, or children; so that the proviso may be most properly read and understood in this sense:
‘Provided that there be no representations admitted among collaterals AFTER [that is, if the degree o± kindred between the col-laterals and their representatives be remoter than the degree of kindred between] brothers and sisters [and their] ‘children’' — most properly,because, without a spurious interpolation, the proviso cannot as is conceived, be understood in any other sense, nor can the objector retort that the words between brackets in the paraphrase are unjustifiable interpolations, because, if they were expunged, the proviso might undoubtedly be expounded in the same sense without contradicting or altering the meaning of a single word contained in the statute, by this exposition G would be in the same predicament in both schemes; the difficulties, which staggered North, will be removed; and the phantom of absurdities, which bewildered him, and perhaps misguided his followers, will vanish.
If the preceding criticism and lection be not satisfactory,
2. The representatives remoter than children of a collateral, who had no brother or sister, may be included in the proviso by the argumentum a pari ratione. statutes in compendious and general terms, not animadverting upon subjects of a criminal nature may justly comprehend cases, not precisely described in the text, but equaly within the reason and scope of the legislative providence. in legibus et statutis brevioris styli, extensio facienda est liberius; at in illis, quae sunt enumerativa casuum particularium, cautius. F. Bacon, de augment, scient. lib. VIII. cap. III. aphor. 17. that this statute, as to the part relating to the present question, is brevioris styli and not enumerativum casuum parti-cularium must be agreed; and that the ^reason for including in the proviso the representatives of him who had, and of him who had not, a brother, is the same no man will doubt but he who ascribes to the legislature, in matters of such moment, levity more than puerile, ‘if the next of kin are cousin germans, and some of them are brothers to one another, others are not, that the children of such of them as had brothers that survived the intestate, shall have a share, but the children of such who had no surviving brothers shall have no share,’ North admits would be ‘most absurd;’ he might have added fantastical and futile, this would have been a good argument for including the children of those cousins german, who had not brothers, in the same predicament with the children of those who had surviving brothers, but surely not for excluding the latter from the shares which the act gave to them in terms unequivocal, and free from ambiguity.
If representatives remoter than children of a collateral be not included in the proviso, either ex vi terminorum, or a pari ratione,
3. The consequence, as hath been observed, is that the case is a casus omissus, and that will not prevent operation of the statute in cases not omitted.
If the explication, here opposed to Norths interpretation, of the statute be correct, the case of Carter versus Crawley, and other cases, decided conformably with that interpretation, deserve to be ranked with the case of Rose versus Bartlett, Cro. Car. 292. the case of Ratcliff versus Graves et alios 1 Vern. 196. and so many more that
Non mihi si linguae centum sint, oraque centum,
Ferrea vox-
Omnia-percurrere nomina possim.
These animadversions, not intended for those learned judges, learned doctors, learned professors, learned practitioners of law, if any such be, who relish all the crudities which have been disgorged, and admit for true science all the jargon which hath been babbled, and for sage doctrine all the garrulities which have been parted, at times in Westminster hall, to men of tastes less depraved, judgments more sound, and spirits too liberal to be the slaves of authority, are inscribed by
THE EDITOR.

Tkis statute is not now in force; but questions hare arisen, are now depending-, and may still arise upon it, in cases where the intestate died before it was repealed. — Note in edition of 1852.

The law here is supposed to he different, see the case of Bailey and Teach] e.. 'Note in edition of 185a.

Horace Rad a different notion of the uncles parental affection towards his nephews and nieces, as may he collected from these words: metuentes patruae linguae XII. ode. II. lib. and ne sis patruus mihi. Sat. III. lib. II. v. 88. — Note in edition of 1852.

TSe word ‘hereafter,’ occurs at this place in the statute. — Note in edition of 1852.

Shaksp. Henry IV. — Note in edition of 1852.